UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

―――――

KUSHAWN S. MILES,

                    Plaintiff,                          Case No. 2:18-cv-220

v.                                                      Honorable Paul L. Maloney

JENNA HELENSKI et al.,

                    Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Helinski, Hill, Henderson, Blemke, Gierski, Batho, Corrigan, LaLonde, and Horton for failure to state a claim. The Court will also dismiss all of Plaintiff's claims against Defendant Bigger, with the exception of Plaintiff's claim that Defendant Bigger, on July 21 and 25, 2018, retaliated against Plaintiff for his exercise of First Amendment rights.

**Discussion**

I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan.  The events about which he complains occurred at that facility during July and August of 2018.   Plaintiff sues a number of officials and employees from URF: Jenna Helinski, an employment readiness counselor; Jennifer Hill, the school secretary; Sergeants Unknown Henderson and Unknown Blemke; Lieutenant Crystal Bigger; Captain Unknown Gierski;[1] Residential Unit Manager Unknown Batho; Assistant Deputy Warden J. Corrigan; Deputy Warden Unknown LaLonde; and Warden Connie Horton.

Plaintiff alleges that, during July, he was working for Defendants Hill and Helinski as a school clerk.  On July 11, 12, 13, and 16, he spoke with Defendants Hill and Helinski about getting into the Employment Readiness Program.  They explained it would not be possible for him to participate because the program was not for prisoners who were serving life sentences without the possibility of parole.

The MDOC offers several programs for prisoners.  The MDOC's website indicates that there is a "Core Program" called Employment Readiness/Pre-Release.[2]  One can certainly understand Plaintiff's desire to participate in such a program.  One can also understand why it would not be appropriate for persons serving life sentences without the possibility of parole.

---

[1] Plaintiff offers two spellings, Gierki and Gierski.  The Court will use Gierski.

[2] *See* http://www.michigan.gov/corrections/0,4551,7-119-33218_68926---,00.html (last visited Dec. 18, 2018).

Despite being particularly ill-positioned to take advantage of the Core Program, Plaintiff states that on July 17, 2018, he threatened to file a grievance against Defendants Hill and Helinski for violating his equal protection rights by refusing to permit him to be a part of the Employment Readiness Program. Plaintiff alleges his threat to file that grievance prompted a flood of retaliatory adverse actions against him.

Plaintiff claims that Helinski and Hill immediately went into Helinski's office and there conspired together to retaliate against Plaintiff. Plaintiff claims further that Helinski and Hill enlisted Defendants Gierski, Henderson, Blemke, and Bigger to assist in their plot. The retaliation took the form of a misconduct report that Plaintiff claims is false. Plaintiff attaches the misconduct report to his complaint.

In the misconduct report, Defendant Helinski wrote:

> Prisoner Myles 237011 stepped into my office with paperwork to ask a question about education files. After I answered the question about completing the education files, he pulled out underneath the paperwork what looked to be an EPI or medical box with 4 or 5 handmade hobbycraft flowers in them. He said, "I have something for your desk here." I said, "I cannot take those." He then tried to switch the story to say that he made the flowers for his sister and that he hopes she really like[s] them. A few minutes later, he came back into my office to ask another work question on lists and filing. After that question was answered by me he said, "You know you cannot tell anyone that I brought those flowers over." I said, "If you are not supposed to bring those in th[e]n you shouldn't have." He said, "I can lose my job if you tell." I said, "Well then you need to follow the rules if you know you are not supposed to bring those in then you cannot." The conversation ended and I notified the school officer in the East Programs building.

(Misconduct Report, ECF No. 1-1, PageID.27.) Although the misconduct was written as a Class II misconduct for insolence, the reviewing officer, Defendant Henderson, along with Defendant Gierski, elevated the charge to a Class I misconduct which placed Plaintiff on non-bond status and in temporary segregation. (*Id*.; Compl., ECF No. 1, PageID.10.) Petitioner claims that the conduct

of Henderson and Gierski in elevating the misconduct constituted an "egregious abuse of authority" and violated Plaintiff's substantive due process rights. Plaintiff filed a grievance against Gierski on July 17 for retaliation and ethnic intimidation.

The next day, Defendant Blemke informed Plaintiff that the warden directed Plaintiff be removed from non-bond status and temporary segregation. (*Id.*, PageID.11.) That apparently also meant the misconduct report was returned to Class II status. Blemke indicated he did not agree with the warden's decision and that Blemke would make sure Plaintiff did not beat the misconduct but would instead be placed on toplock. (*Id.*) Blemke stated that if it were up to him, "he would have Plaintiff's black ass in the hole." (*Id.*) Plaintiff characterizes this exchange as an egregious abuse of authority and a violation of his substantive due process rights. Plaintiff filed a grievance against Blemke on July 18 for retaliation and ethnic intimidation.

Plaintiff next gave an "affidavit of bias" to Defendants Bigger and Corrigan in an attempt to get Defendant Bigger excused from hearing the misconduct. Two days later, on July 21, Defendant Bigger reviewed the grievances against Gierski and Blemke with Plaintiff. Bigger said she would get Plaintiff for filing grievances against her friends and that he would regret it if he did not sign off. She scoffed at Plaintiff's "affidavit of bias" and told Plaintiff she knew he was guilty and that her staff had no reason to lie. If he did not sign off, Bigger warned, she would impose severe sanctions when she heard the misconduct.

Bigger conducted the misconduct hearing, a Class II misconduct hearing,[3] on July 25. She found Plaintiff guilty and imposed five days' toplock and five days' loss of privileges.

---

[3] Plaintiff insists on describing these proceedings as a Class I misconduct hearing; however, all of the documentation he attaches to the complaint indicates that it was heard and decided as a Class II misconduct. The hearing resulted in a Class II Misconduct Hearing Report wherein Plaintiff was found guilty of Offense 426, which is a Class II Insolence

Plaintiff claims her actions constitute another egregious abuse of authority. Moreover, Plaintiff claims that Bigger conducted other Class II misconduct hearings with similarly situated prisoners that same day. Those prisoners, however, received lesser punishments. Accordingly, Plaintiff contends that Bigger violated his equal protection rights as well.

Plaintiff then sent Defendant Horton a letter complaining that it was really a Class I misconduct hearing and he was improperly denied a hearing officer and the procedural protections attendant to that type of hearing. Defendant Horton never responded. Plaintiff claims that makes her liable for Bigger's substantive and procedural due process violations.

Plaintiff appealed the misconduct determination to Defendants LaLonde, Batho, and Corrigan, to no avail. Then, he wrote Horton again regarding the wrongs perpetrated against Plaintiff by Blemke, Bigger, LaLonde, Batho and Corrigan. Again, the warden did nothing.

Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages totaling hundreds of thousands of dollars.

II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

charge. (*See* Misconduct Hearing Report, ECF No. 1-1, PageID.30; MDOC Policy Directive 03.03.105, Attach. B (Eff. 7/1/2018).) Plaintiff acknowledged it was a Class II misconduct on his appeal forms. (Class II Misconduct Appeal, ECF No. 1-1, PageID.33-36.) Nonetheless, Plaintiff argues that once the misconduct was elevated to Class I, only a hearing officer could reduce it to a Class II. (*Id.*, PageID.36.) That never happened.

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.     Civil Conspiracy

Petitioner parrots the words "conspire" or "conspiracy" twenty-one times in his complaint. Beyond repeating the words, however, he alleges no facts to support his claim that the Defendants conspired against him.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are wholly conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers who were involved at some stage in disciplining Plaintiff or processing his many grievances.

Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference

from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring as the misconduct report and Plaintiff's grievances worked their way through the system are simply steps in a sequential process rather than the product of some overarching conspiracy, Plaintiff fails to state a plausible claim of conspiracy.

Plaintiff also alleges that Defendants have violated 42 U.S.C. § 1985. To state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that (1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal protection of the laws and (3) that the conspirators committed an overt act (4) that injured the plaintiff. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)). The § 1985 plaintiff also must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at 839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).

Plaintiff offers two possible equal protection claims that might serve as the foundation for his § 1985 claim: the claim against Hill and Helinski for discriminating against

Plaintiff as a prisoner serving a life sentence without the possibility of parole; and, the claim against Biggers, and perhaps others, for imposing a sentence of five days' toplock and five days' loss of privileges when others received lesser sentences for allegedly similar misconduct.

"[P]risoners are not a protected class for the purposes of § 1985(3)." *Rose v. Leaver*, 35 F. App'x 191, 193 (6th Cir. 2002). There is no authority that suggests the subset of prisoners serving life sentences would be a protected class either. With respect to the equal protection claim relating to Plaintiff's misconduct punishment, there does not appear to be any applicable class. All the "similarly situated" individuals who were treated differently are the same race. It appears that Plaintiff is arguing he is a "class of one." The protections afforded by § 1985 do not apply to "class of one" claims. *Underfer v. University of Toledo*, 36 F. App'x 831, 834 (6th Cir. 2002). Because Plaintiff has not alleged any class-based animus, he has failed to state a conspiracy claim under § 1985.

Because Plaintiff fails to sufficiently allege a conspiracy, all claims that a defendant is liable as a conspirator are properly dismissed.

IV.    Vicarious Liability

With respect to Defendants Horton, LaLonde, Batho, and Corrigan, Plaintiff alleges they are responsible for the unconstitutional conduct of the other Defendants because Plaintiff complained and they did not fix it; they reviewed misconduct appeals and did not correct the alleged error; or they reviewed grievances and did not correct the alleged wrongful conduct. Plaintiff suggests that such conduct is acquiescence and that it separately establishes liability under § 1983. Plaintiff is wrong.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Horton, LaLonde, Batho, and Corrigan engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

V.      Violations of MDOC Policy Directives

Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive

does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. Therefore, Plaintiff's claims that Defendants failed to comply with MDOC policies fails to state a claim under § 1983.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp.*, *Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

## VI.   Equal Protection

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff alleges that Helinski and Hill violated his equal protection rights when they refused to permit him to participate in the Employment Readiness/Pre-Release Program because he was serving a life sentence without the possibility of parole. As noted above, prisoners are not a suspect class. *See Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). There is no authority that suggests that prisoners serving life sentences enjoy special protection as a class either. Therefore, the decision to not permit Plaintiff to participate in the program will not offend the Equal Protection Clause if there is a rational basis for it under any reasonable state of facts. *See Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993). It is not difficult to conceive of a rational basis for refusing to permit prisoners who will never be released to participate in a program that educates prisoners so they will be ready for employment upon release. Accordingly, Plaintiff has failed to state an equal protection claim against Defendants Helinski or Hill.

Plaintiff's equal protection claim against Defendant Bigger also fails, but for a different reason. Plaintiff contends that Defendant Bigger discriminated against him when she imposed a sanction of five days of toplock and five days of loss of privileges following Defendant Bigger's determination that Plaintiff was guilty of the Class II misconduct of Insolence. Plaintiff suggests that Defendant Bigger's imposed sanction was out of line with the severity of the offense. The sanction does not seem particularly extreme when compared to the possible sanctions for such a misconduct. MDOC Policy Directive 03.03.105, Attachment D, indicates that upon finding a prisoner guilty of a Class II Misconduct, the hearing officer must impose one or more of the

following sanctions: (A) up to five days of toplock; (B) up to 30 days of loss of privileges; (C) up to 40 hours of extra duty; and (D) restitution.

Plaintiff does not look to the possible range when assessing the severity of his sanction; instead, he looks to sanctions Defendant Bigger imposed on two other prisoners found guilty of Class II misconducts on the same day Plaintiff was found guilty. Plaintiff offers the affidavits of Domonique Farr and Kerrick Farquharson. Prisoner Farr avers that Lieutenant Bigger imposed a one-day sanction on him for a Class II guilty finding on July 25, 2018. It is not clear whether that means one-day toplock, one-day loss of privileges, or both. Prisoner Farquharson avers that Lieutenant Bigger imposed a two-day sanction on him when he was found guilty of a Class II misconduct on the same day. Again, it is not clear whether the sanction was two-days' toplock, two-days' loss of privileges, or both. Farr and Farquharson both indicate that they had other recent misconducts. Plaintiff alleges he has been misconduct-free for two years.

Even though neither a fundamental right nor a suspect class is at issue in this claim, the Supreme Court has acknowledged the viability of a 'class of one' equal protection claim. In *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000), the Supreme Court stated: "Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564. Such a claim depends on Plaintiff showing that he has been treated differently than others similarly situated.

Plaintiff's claim fails because he does not allege facts to demonstrate that the other prisoners were similarly situated; any allegations that state that other prisoners were similarly

situated are entirely conclusory. *See, e.g., Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("First, '[t]o satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.'") To be a similarly-situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani v. Mich. Dep't of Corr.,* 432 F. App'x 453, 460 (6th Cir. 2011) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Here, all we know is that the other prisoners were guilty of Class II misconducts. There are a dozen different classifications of Class II misconducts. *See* MDOC Policy Directive 03.03.105, Attachment B. To suggest, as Plaintiff does, that all Class II misconduct violators are similarly situated is the equivalent of saying that all Class II misconduct violators deserve the same sanction. The fact that hearing officers are called upon to select from a range of sanctions based on the seriousness and persistence of the Class II misconduct violation at issue indicates that sharing the similarity of being a Class II misconduct violator is not sufficiently similar to serve as the foundation for an equal protection claim. Plaintiff does not allege facts that would permit the Court to infer that Farr and Farquharson were similarly situated in every respect material to the imposition of sanctions. Therefore, Plaintiff fails to state an equal protection claim Defendant Bigger.

VII.   Due Process

Plaintiff contends Defendants have deprived him of his procedural and substantive due process rights by retaliating against him for filing or threatening to file grievances, fabricating a Class II misconduct charge, temporarily elevating the charge to Class I, having a biased decision-maker who prejudged the misconduct charge, and not properly responding to Plaintiff's grievances.  Due process claims, whether they are procedural or substantive, are examined under a two-part analysis:

> First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment.  Only after identifying such a right do we continue to consider whether the deprivation of that interest contravened the notions of due process under the Fourteenth Amendment.

*Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 604-605 (6th Cir. 2016) (internal quotation marks omitted).  Plaintiff's due process claims fall short at the first step.  He has failed to identify a protected liberty or property interest.

### A.   Grievances

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No.

93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Plaintiff's allegations that Defendants interfered with or failed to properly address his grievances did not deprive him of due process.

## B.    Disciplinary Proceedings

Plaintiff alleges that his substantive and procedural due process rights were violated by the actions of several Defendants, first because the misconduct report was entirely fabricated, and second because the charge was improperly elevated, improperly decided by a biased decision-maker, and improperly decided on appeal by persons who acquiesced in the prior improprieties. A prisoner's ability to make a procedural due process challenge to a prison misconduct conviction depends on whether the convictions implicated any liberty interest.

In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by

the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his conviction resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[4] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *Id.* at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-

---

[4] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5). According to the MDOC Offender Tracking Information System (OTIS), Plaintiff committed his crimes on August 30, 1993. *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=237011 (last visited Dec. 19, 2018). This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Plaintiff. *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821-22 n.3 (E.D. Mich. 2004).

process claim based on the loss of disciplinary credits.  *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Moreover, because Plaintiff was found guilty of a Class II misconduct, there were no disciplinary credit consequences for the conviction.  Under MDOC Policy Directive 03.03.105 ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  The policies further provide that prisoners are deprived of disciplinary credits only when they are found guilty of a Class I misconduct.  *See* MDOC Policy Directive 03.03.105 ¶ AAAA; MDOC Policy Directive 03.01.101 ¶ W.

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation.  *See Sandin v. Connor*, 515 U.S. 472 (1995).  Plaintiff has not identified any significant deprivation arising from his convictions.  Five days of toplock and five days of loss of privileges do not rise to the level of an atypical and significant hardship.  *See Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (30 days of loss of privileges and 30 days of "toplock" is not an atypical and significant hardship); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) ("[Plaintiff] has no due process claim for the loss of privileges and confinement to segregation.").  Consequently, Defendants did not deprive Plaintiff of a protected property or liberty interest.

## C.    Interference with Plaintiff's First Amendment Rights

Although Plaintiff does not have a due process right to an effective grievance remedy, he does have a First Amendment right to file a prison grievance.  Because the exercise of that right is protected against retaliation by the First Amendment, Plaintiff does not have a separate due process protected right.

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment, the First Amendment, that provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claims will be dismissed.

VIII.   Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff employs the word retaliate, in one form or another, many times in his complaint. If one eliminates those claims that fail because the conspiracy allegations are insufficient and those claims that fail because there is no vicarious liability under § 1983, the claims that remain are: (1) that Defendant Helinski retaliated against Plaintiff by filing a false misconduct report after Plaintiff threatened to file a grievance against her for denying Plaintiff admission to the Employment Readiness/Pre-Release Program; and (2) that Defendant Bigger retaliated against Plaintiff by finding Plaintiff guilty of a false Class II misconduct and then imposing an overly-harsh sanction after Plaintiff filed complaints against Bigger in June, grievances against Bigger's friends, Blemke and Gierski in July, and an "affidavit of bias" against Bigger in July.

### A.   Protected Conduct

The protected conduct at issue with respect to the claim against Helinski is Plaintiff's threat to file an unlawful discrimination grievance against her. The protected conduct at issue with respect to the claim against Bigger is Plaintiff's voicing of complaints against Bigger in June, Plaintiff's written grievances against Gierski and Blemke in July, and Plaintiff's written "affidavit of bias" in July.

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Here, Petitioner does not allege that he actually filed a grievance against Helinski; he only threatened to do so. However, he did identify the nature of the grievance he intended to file. Moreover, Petitioner did not file a grievance against Bigger—at least not before the allegedly retaliatory conduct on July 25. The only formal grievances are the ones Plaintiff filed against Gierski and Blemke.

Plaintiff's complaints about Bigger in June would enjoy no less protection simply because he presented them orally. An inmate has a right to file grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Moreover, even a threat to file a grievance—such as the threat Plaintiff made to Defendant Helinski—may suffice. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). Even Plaintiff's "affidavit of bias" is likely protected conduct. "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity).

Nonetheless, whether presented in writing, orally, or by threat, the right to file a grievance is protected only insofar as the grievance is not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous

claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil

Procedure 11 sanctions."

The Sixth Circuit recently provided additional guidance regarding the meaning of

grievance frivolity:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous
> when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*,
> 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the
> prisoner complained that the prison officer should "not be able to conduct a non-
> invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794
> (6th Cir. 2002) (finding grievances that "concerned being required to use a
> typewriter rather than a computer, and being required to sit quietly in defendant's
> office after being told again that there was no computer available for him to use" to
> be frivolous and not to "rise to the level of protected conduct"); *Scott v.
> Kilchermann*, 230 F.3d 1359, at *1-2 (6th Cir. 2000) (finding a grievance frivolous
> when the inmate complained that he had been subject to verbal abuse); *Thaddeus-
> X v. Love*, 215 F.3d 1327, at *2-3 (6th Cir. 2000) (finding a prisoner's threat to file
> a grievance against an officer for "eating waffles at a prison guard desk," which
> was against prison policy, "patently frivolous as the defendant's conduct had no
> adverse impact on [the prisoner]"). We have also described a non-frivolous
> grievance as a "legitimate" grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985
> (6th Cir. 2009).

*Maben v. Thelen*, 887 F.3d 252, 264-65 (6th Cir. 2018).

Here, Plaintiff's complaints against Bigger in June, Plaintiff's grievances against

Gierski and Blemke in July, and the "affidavit of bias" are not frivolous, *de minimis*, or illegitimate

on their face. Plaintiff's threat to grieve Helinski, however, is patently frivolous. For the reasons

discussed in detail above, it is not legitimate to complain that one is being denied participation in

a program designed to educate prisoners for the requirements of life outside of prison, in

anticipation of release from prison, when one is sentenced to life imprisonment without the

possibility of parole. Accordingly, Plaintiff's retaliation claim fails against Defendant Helinski at

the first step.

**B.    Adverse Action**

The prospect of Class II misconduct punishment and the punishment actually imposed rise to the level of adverse action.  *Maben*, 887 F.3d at 266-67.

**C.    Retaliatory Motive**

Plaintiff's allegations demonstrate that Plaintiff's filing of grievances against Gierski and Blemke and written and oral complaints about Bigger motivated Defendant Bigger to take adverse action:

> Defendant Bigger [told Plaintiff] that she would get him for filing grievances against her, [her] friends, and [her] co-workers and if Plaintiff didn't sign-off Plaintiff would regret it . . . .  Defendant Bigger told Plaintiff that if he refused to sign off on both grievances, that she would make it her business to hear him on his misconduct and impose severe sanctions to make Plaintiff think twice about filing grievances against her or her friends and co-workers.

(Compl., ECF No. 1, PageID.12.)  At this stage of the proceedings, the Court must accept the allegations as true.

<u>**Conclusion**</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Helinski, Hill, Henderson, Blemke, Gierski, Batho, Corrigan, LaLonde, and Horton will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Moreover, all of Plaintiff's claims against Defendant Bigger, with the exception of Plaintiff's claim that Defendant Bigger, on July 21 and 25, 2018, retaliated against Plaintiff for his exercise of First Amendment rights, will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

An order consistent with this opinion will be entered.


Dated:   January 10, 2019                    /s/ Paul L. Maloney
                                             Paul L. Maloney
                                             United States District Judge