UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KUSHAWN MILES #237011,

        Plaintiff,

v.

CRYSTAL BIGGER, et al.,

        Defendants.
_____/

Case No. 2:18-cv-00220

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.    Introduction

This is a civil rights action brought by state prisoner Kushwan Miles pursuant to 42 U.S.C. § 1983. Miles alleges that Lieutenant Crystal Bigger retaliated against him in violation of his rights under the First Amendment.[1]

Defendant Bigger filed a motion for summary judgment based on Plaintiff's failure to exhaust all administrative remedies, Miles responded, Bigger replied, and Miles sur-replied. (ECF Nos. 25, 28, 29, and 33.) The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court (1) grant Bigger's motion for summary judgment and (2) dismiss the First Amendment retaliation claim against Bigger without prejudice.

---

[1]     Initially, Miles alleged a few constitutional violations against several defendants. (*See* ECF No. 1.) The Court, however, dismissed all claims against all the defendants, except for Miles's retaliation claim against Bigger relating to events on July 21 and 25, 2018. (ECF Nos. 5, PageID.84, and 6.)

1

## II.     Summary of Plaintiff's Relevant Allegations

Miles's claim began with him being denied access to various rehabilitation programs offered by URF because Miles is serving a life sentence. (ECF No. 1, PageID.8.) To gain access, Miles told dismissed-Defendants Hill and Helinski that he would file a grievance against them based on their discrimination against him. (*Id.*) Miles alleges that Hill and Helinski, instead of granting access, recruited dismissed-Defendants Gierki, Henderson, Blemke, and Bigger to retaliate against him, in violation of the First Amendment. (*Id.*, PageID.9.)

According to Miles, the retaliation began when Hill and Helinski shook down his housing area. (*Id.*) Despite nothing being found, Miles was then allegedly fired from his school clerk position. (*Id.*) Miles claims that the retaliation continued when he received a false Class II misconduct for bringing Helinski hobby craft flowers in a box. (*Id.*) Miles asserts that after an initial review of the misconduct by Henderson and Gierki, the misconduct was elevated to a Class I violation. (ECF No. 1, PageID.10.) Miles says that the misconduct was reclassified to a Class II misconduct at the direction of the warden. (*Id.*)

Miles states that before his misconduct hearing, he gave Bigger and Corrigan an "affidavit of bias" to have Bigger excused from presiding over the hearing. (*Id.*, PageID.12-15.) Two days later, on July 21, Bigger allegedly reviewed the grievances against Gierski and Blemke with Miles. (*Id.*, PageID.12.) According to Miles, Bigger told him that she would get him for filing grievances against her friends and that he would regret it if he did not sign off. (*Id.*, PageID.11-12.)   Then, Bigger scoffed at

Miles's "affidavit of bias" and told Miles that she knew he was guilty because her staff had no reason to lie. (*Id*.) If Miles did not sign off, Bigger allegedly warned, she would impose severe sanctions when she heard the misconduct. (ECF No. 1, PageID.15.)

On July 25, 2018, Bigger conducted a Class II[2] misconduct hearing.[3] (ECF No. 1-1, PageID.30.) Miles states that her actions constitute another egregious abuse of authority. (*Id*., PageID.13.) Moreover, Miles asserts that Bigger conducted other Class II misconduct hearings with similarly situated prisoners that same day and that those prisoners received lesser punishments. (*Id*., PageID.15.)

### III.  Summary of Arguments

In her motion, Defendant Bigger notes that Miles did not argue retaliation during the misconduct hearing proceedings or the appeal from these proceedings. (ECF No. 26, PageID.133-34.)

In response, Miles advances two arguments. (ECF No. 28.) First, he argues that the Prison Litigation Reform Act does not require him to raise the issue of retaliation during his misconduct hearing or on appeal. (*Id*., PageID.153.) Second,

---

[2] Miles describes these proceedings as a Class I misconduct hearing. However, all of the documentation he attaches to his complaint indicates that it was heard and decided as a Class II misconduct. The hearing resulted in a Class II Misconduct Hearing Report wherein Plaintiff was found guilty of Offense 426, which is a Class II Insolence charge. (*See* No. 1-1, PageID.30.) Miles acknowledged in his appeal forms that the charge against him was a Class II misconduct. (ECF No. 1-1, PageID.33-36.) Nonetheless, Miles argues that once the misconduct was elevated to Class I, only a hearing officer could reduce it to a Class II. (*Id*., PageID.36.) That never happened.

[3] Bigger found Miles guilty and imposed five days' "Top-Lock" (confinement to quarters) and five days' loss of privileges. (ECF No. 1-1, PageID.30.)

3

he argues that if an exhaustion requirement exists, then the grievance that he filed with URF's Inspector's Office should satisfy the requirement. (*Id.*, PageID.153-154.) Miles attached to his response a grievance that lacks an identifier number and receipt date. This purported grievance alleges retaliation by Defendant Bigger. (ECF No. 28-1, PageID.158.) Miles says that this grievance should satisfy the exhaustion requirement because Inspector's Office refused to respond to it. (ECF No. 28, PageID.154.)

Defendant Bigger replies that Miles is fully aware of the grievance procedure within MDOC and should have pursued this purported grievance through Step II. (ECF No. 29.) Bigger attaches a copy of Miles's MDOC Step III Grievance Report, which shows that Miles filed numerous grievances prior to the dates of the events in this case and pursued those grievances through Step III. (ECF No. 29-2, PageID.169-75.)

In a sur-reply, Miles notes that he is not a lawyer and argues that he should not be required to comply with procedures that are not clearly written in MDOC policy directives. (ECF No. 33.)

## IV. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## V. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). In rare circumstances, an administrative remedy will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally

6

before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 2007 U.S. Dist. LEXIS 81101 at *12.

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019. Where grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

7

However, where other administrative remedies are available, the prisoner is required to exhaust those available remedies prior to filing a federal lawsuit. For example, where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct[4], the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he or she must then must "file a motion or application for rehearing [of his misconduct conviction] in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." Mich. Comp. Laws § 791.255(1); *see also Siggers*, 652 F.3d at 693-94. Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he or she must file an appeal based on retaliation. MDOC PD 03.03.105 ¶¶ UUU-XXX; *see also Jones v. Heyns*, 2014 U.S. Dist. LEXIS 55712 at *13-17 (W.D. Mich. Jan. 28, 2014).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

---

[4] Violations of written rules within the MDOC are classified as either Class I, Class II or Class III misconducts. Class I consists of the most severe violations, and Class III consists of the least severe. While Class I misconducts are considered "major" misconducts and are "subject to all hearing requirements set forth in MCL 791.252", Class II and III misconducts are considered "minor" misconducts and are "subject to all requirements currently set forth in Department Administrative Rules and policy directives for 'minor' misconducts." MDOC Policy Directive (PD) 03.03.103 ¶ B (eff. date 07/01/18).

8

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[5]

## VI. Analysis

The question presented is whether Miles properly exhausted all administrative remedies regarding his First Amendment retaliation claim against Bigger. For the following reasons, it is the opinion of the undersigned that Miles did not properly exhaust all administrative remedies. As such, it is also the opinion of the undersigned that there is no issue of material fact that must be submitted to a jury.

**First**, Miles failed to raise his allegations of retaliation by Defendant Bigger in the context of his misconduct hearing and appeal. Miles acknowledges that he did not raise this issue during his hearing or on appeal. (ECF No. 28, PageID.153.) A

---

[5] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

review of the record confirms this fact. (ECF No. 26-4, PageID.150-51.) During his misconduct hearing, Miles denied the charge against him, stating "the words were not said," "the flowers were not confiscated," and "the officer did not shake him down." (*Id.*) According to the record, Miles did not raise the issue of retaliation. In cases like this where an inmate claims that he received a retaliatory false misconduct, whether a Class I misconduct or a Class II or III misconduct, the inmate must first raise the issue during the Misconduct Hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). Here, Miles failed to raise the issue of retaliation during his misconduct hearing. (ECF No. 26-4, PageID.150.)

**Second**, Miles failed to properly exhaust his retaliation claim in a grievance. Miles argues that he satisfied the PRLA's exhaustion requirement when he filed a grievance complaining about retaliation (ECF No. 28-1, PageID.158); and argues that the Inspector's Office never responded to the grievance. (ECF No. 28, PageID.153-154.) As shown below, Miles includes a copy of the grievance that he says he filed. (ECF No. 28-1, PageID.158.)

SENT TO WRF'S INSPECTOR'S OFFICE ON 7/25/18

**MICHIGAN DEPARTMENT OF CORRECTIONS**
**PRISONER/PAROLEE GRIEVANCE FORM** ("EXHIBIT-A")

4835-4247 10/94
CSJ-247A

Date Received at Step I _____ Grievance Identifier: |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Be brief and concise in describing your grievance issue. If you have any questions concerning the grievance procedure, refer to PD 03.02.130 and OP.03.02.130 available in the prison Law Library.

| Name (print first, last) | Number | Institution | Lock Number | Date of Incident | Today's Date |
|---|---|---|---|---|---|
| RUSHAWN MILES-EL | 257011 | URF-W | H-848 | 7-25-18 | 7-25-18 |

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 7-25-18
If none, explain why. I SPOKE DIRECTLY TO LT. BIGGER AT MY DISCIPLINARY HEARING ATTEMPTING TO RESOLVE THIS MATTER. ISSUE COULD NOT BE RESOLVE.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. THIS COMPLAINT IS AGAINST LT. BIGGER BASED UPON RETALIATION AND STAFF CORRUPTION AND ABUSE OF AUTHORITY. ON 7-21-18 I WAS THREATENED BY LT. BIGGER BECAUSE I WOULDN'T SIGN-OFF ON BOTH GRIEVANCES AGAINST CAPT. OITZKI AND SGT. BLEDSOE. BIGGER TOLD ME THAT SHE WAS GOING TO GET ME AND THAT I WOULD REGRET NOT SIGNING OFF AND FOR THE COMPLAIN I FILED AGAINST HER IN JUNE WITH THE PREA AUDITORS. ON THE ABOVE DATE I SEEN BIGGER FOR AN INSOLENCE-CLASS I MISCONDUCT. I EXPLAINED TO BIGGER THAT SHE COULD NOT HEAR ME ON A CLASS-I MISCONDUCT AND NOTHING IN THE POLICY ALLOWS A CLASS I TO BE DE-ESCALATED TO A CLASS-II. SHE TOLD ME THAT SHE DIDN'T CARE. THAT SHE IS HEARING THE TICKET AND MAKE ME THINK TWICE ABOUT FILING GRIEVANCES AGAINST HER CO-WORKERS AGAINST HER OR ANYONE ELSE THAT WORKS AT URF. THEN BIGGER'S CORRUPTION AND RETALIATION CONTINUED WHEN SHE IMPOSED EXCESSIVE SANCTIONS AGAINST ME (10-DAYS) WHEN I HAVE BEEN MORE THAN A 2-YEARS TICKET FREE (CLASS I, II, III) VERSUS EVERYONE SHE HEARD ON THEIR CLASS II-TICKETS THAT HAS NOT BEEN A MONTH TICKET FREE AND ONLY GAVE THEM II-DAY OF EITHER TOP-LOCK OR LOP). BUT I WAS GIVEN THE MOST DAYS OUT OF SPITE AND RETALIATION.

I AM FILING THIS GRIEVANCE WITH THIS OFFICE FOR AN IMPARTIAL INVESTIGATION PURSUANT TO PD 01.01.140 INTERNAL AFFAIRS AND PD 03.02.130. SECTIONS (R) AND (V).

Grievant's Signature _____

RESPONSE (Grievant Interviewed? ☐ Yes ☐ No   If No, give explanation. If resolved, explain resolution.)

| Respondent's Signature | Date | Reviewer's Signature | Date |
|---|---|---|---|
| Respondent's Name (Print) | Working Title | Reviewer's Name (Print) | Working Title |

| Date Returned to Grievant: | If resolved at Step I, Grievant sign here. Resolution must be described above. | Grievant's Signature | Date |
|---|---|---|---|

DISTRIBUTION: White, Green, Canary, Pink — Process to Step One; Goldenrod — Grievant

11

Assuming that Miles did file his grievance complaining about retaliation and that the Inspector's Office failed to respond, Miles still failed to complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Ngo*, 548 U.S. at 90-91. To do so, as stated in the MDOC Policy Directive, Miles was required to complete a Step II grievance form and submit the completed form with the Step I grievance form to the Step II Grievance Coordinator within 10 days of the Step I response being due. MDOC PD 03.02.130 ¶ BB. Miles failed to follow the MDOC Policy Directive. Specifically, he failed submit his grievance to Step II and then Step III to complete the administrative review process. As a result, the undersigned concludes that Miles failed to properly exhaust his grievance and the retaliation complaint within it.

**Third**, Miles's request to be held to a lower standard than applies to litigants with an attorney must be rejected. Specifically, Miles states that he is not a lawyer and does not have training that would prepare him to be held to a higher standard. (ECF No. 28, PageID.154.) There are several problems with this request. First, the MDOC Policy Directive is published. Indeed, Miles cites specific language in the MDOC Policy Directive to support one of his arguments. (*Id.*, PageID.153-154.) Second, Miles is familiar with the grievance process because he has pursued about 36 grievances through Step III since December 2012. (ECF No. 29-2, PageID.167-176.) And third, the PRLA's exhaustion requirement, is designed to reduce the quantity and improve the quality of prisoner lawsuits by "afford[ing] corrections officials time

12

and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525. If Miles and other non-lawyer prisoners were excused from the exhaustion requirement, the PRLA's purpose identified in *Porter* would be circumvented. Institutions like MDOC would be denied meaningful opportunities to hear and remedy grievances from any non-lawyer prisoners. As such, the undersigned concludes that Miles failed to properly exhaust his grievance and his First Amendment retaliation claim within it.

## VII. Recommendation

The undersigned respectfully recommends that this Court (1) grant Bigger's motion for summary judgment and (2) dismiss Miles's First Amendment retaliation claim against Bigger without prejudice. If the Court accepts this recommendation, the case will be dismissed.

Dated:   January 28, 2020                    /s/ *Maarten Vermaat*
                                             MAARTEN VERMAAT
                                             U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

13